IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


JAMES KEVIN RUPPERT,

        Plaintiff,

 vs.                                                      No. CIV 09-138 MV/LFG

ERASMO BRAVO, et al.,

        Defendants.

## MAGISTRATE JUDGE'S ANALYSIS
## AND RECOMMENDED DISPOSITION[1]

THIS MATTER is before the Court, *sua sponte*, under 28 U.S.C. § 1915(e)(2) and FED. R. CIV. P. 12(b)(6), on Plaintiff's civil rights complaint. Plaintiff James Kevin Ruppert ("Ruppert") is incarcerated, appearing *pro se*, and proceeding *in forma pauperis*. For the reasons stated below, the Court recommends that certain of Ruppert's claims be dismissed.

The Court has discretion to dismiss an *in forma pauperis* complaint *sua sponte* under § 1915(e)(2) "at any time if . . . the action . . . is frivolous or malicious; [or] fails to state a claim on which relief may be granted." The Court also may dismiss a complaint *sua sponte* under FED. R. CIV. P. 12(b)(6) for failure to state a claim if "it is 'patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). In reviewing Plaintiff's *pro se* complaint, the Court applies the same legal standards applicable to pleadings drafted by counsel but liberally construes the allegations. *See*,

---

[1]**Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.**

Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Northington v. Jackson, 973 F.2d 1518, 1520-21 (10th Cir. 1992).

## Factual and Procedural Background

Ruppert filed a Complaint [Doc. 1] on February 11, 2009, alleging various violations of his constitutional rights by five named Defendants while he was incarcerated at the Guadalupe County Correctional Facility ("GCCF") in Santa Rosa, New Mexico.

On June 8, 2009, Chief United States District Judge Martha Vázquez entered an Order [Doc. 22] resulting from a review under 28 U.S.C. § 1915, in which she dismissed Ruppert's claims against all of the named Defendants. However, in that Order Judge Vázquez also permitted Ruppert to file an Amended Complaint to state more clearly his claim of retaliation for exercise of his First Amendment rights and to name a specific Defendant or Defendants in connection with that claim. At present, no Defendant has been served with process in this case.

On July 10, 2009, Ruppert filed his Amended Complaint [Doc. 34], along with a document titled "Deposition Insert" [Doc. 35], which the Court considers to be part of the Amended Complaint. These documents together will hereinafter be referred to as the Amended Complaint.

In the June 8 Order, Judge Vázquez noted that Ruppert asserted three claims under the First and Fourteenth Amendments, including allegations that he was deprived of access to the courts in that grievance procedures were deliberately violated and he was denied "proper legal assistance"; and allegations of violations of due process and equal protection in that he was wrongfully terminated from prison employment and refused other work assignments.

With respect to the claim of denial of access to the courts, Judge Vázquez found that Ruppert failed to establish "relevant actual injury" under Lewis v. Casey, 518 U.S. 343, 351 (1996), and Bounds v. Smith, 430 U.S. 817, 828 n.17 (1977), in that he did not allege that Defendants' actions amounted to active interference with his attempts to prepare and file legal documents. With respect to Ruppert's claims of violations of due process and equal protection, the Court held that Ruppert failed to state a due process claim for dismissal from his prison job as he was dismissed from the

job for disciplinary reasons and, in any event, did not have a liberty interest in his prison job. All claims relating to prison employment, inadequacy of the grievance procedure, and denial of access to the courts were therefore dismissed. All claims against Defendants Bravo, Torello, Ms. Rodgers, Mr. Rodgers and Jaramillo were dismissed with prejudice, and those Defendants were dismissed as parties to the action.

The Court found, however, that Ruppert's assertion that he was threatened with transfer or lockup if he initiated litigation might state a claim for retaliation in violation of the First Amendment. Thus, the Court directed that Ruppert would be allowed to file an amended complaint asserting a retaliation claim against a particular party.

## **Analysis**

In his Amended Complaint, Ruppert attempts to re-state several claims that were dismissed, by presenting them anew as retaliation claims. This is impermissible. The Court's June 8 Order did not constitute an open invitation to Ruppert to restate claims that were dismissed with prejudice, and an attempt to revive those claims by casting them as actions taken in retaliation for exercise of his constitutional rights will not be allowed.

With that in mind, the Court examines Ruppert's retaliation claims against each Defendant, giving his complaint the requisite liberal construction.

### *Warden Erasmo Bravo*

Ruppert's claim against Warden Erasmo Bravo ("Bravo") consists of his statement that Warden Bravo "is aware of the unconstitutional behavior of his officers." [Doc. 34, at 1]. This is insufficient to state a claim against Bravo.

> [R]espondent believes a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution. We reject this argument. Respondent's conception of "supervisory liability" is inconsistent with his accurate stipulation that petitioners may not be held accountable for the misdeeds of their agents. In a § 1983 suit or a Bivens action - where masters do not answer for the torts of their servants - the term "supervisory liability" is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.

3

Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949 (2009).  *See also*, Mitchell v. Maynard, 80 F.3d 1433, 1441 (10th Cir. 1996).

The fact that Ruppert may have sent letters and copies of grievances to Bravo, or told him of certain actions taken by subordinates, does not suffice to state a claim against Bravo under § 1983.  The allegations and documentation supplied by Ruppert fail to allege sufficient personal participation by Bravo in a violation of Ruppert's constitutional rights, and the Court recommends that the claims against Bravo, as set forth in the Amended Complaint, be dismissed with prejudice.

### *Captain Phil Aragon*

In the Amended Complaint, Ruppert alleges that on December 9, 2008, during an interview in connection with one of his informal complaints, Captain Aragon ("Aragon") threatened to transfer Ruppert if he filed this lawsuit.  He alleges further that on January 12, 2009, Aragon stated that if Ruppert filed this lawsuit he would be locked up in "involuntary administration segregation." [Doc. 34, at 2].

Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts, including the filing of lawsuits and administrative grievances.  Smith v. Maschner, 899 F.2d 940, 947 (10th Cir. 1990).  This principle applies even where the action taken in retaliation would otherwise be permissible.

> [W]hile a prisoner enjoys no constitutional right to remain in a particular institution and generally is not entitled to due process protections prior to such a transfer, prison officials do not have the discretion to punish an inmate for exercising his first amendment rights by transferring him to a different institution.

Frazier v. DuBois, 922 F.2d 560, 561-62 (10th Cir. 1991).  The Court finds that the alleged threats of transfer or lockup in segregation are sufficient to "chill a person of ordinary firmness from continuing" to complain of constitutional violations by means of litigation or the filing of grievances.  Poole v. County of Otero, 271 F.3d 955, 960 (10th Cir. 2001), *abrogated on other grounds*, Hartman v. Moore, 547 U.S. 250 (2006).

Ruppert's assertions are sufficient to state a claim under § 1983 for violation of Plaintiff's

First Amendment rights, and the Court recommends that Ruppert's claims against Aragon, as set forth in the Amended Complaint, be retained and that service of process be effected with respect to Defendant Aragon.

### *Ms. Rodgers*

Ruppert identifies this Defendant as "Ms. Rodgers who is currently Ms. Vigil." [Doc. 34, at 3]. He complains that dates were altered on certain grievances that he filed, that this was done with a retaliatory motive, and that Ms. Rodgers as a grievance and disciplinary officer was aware of "this retaliatory behavior." [Doc. 34]. He also asserts that Ms. Rodgers made false statements on grievances.

As discussed above, a Defendant's status as a supervisory official does not render her liable for the alleged retaliatory acts of her subordinates. Ashcroft v. Iqbal. Furthermore, Ruppert's allegation that Ms. Rodgers "made false statements on grievances" does not state a claim for retaliation. Ruppert does not even assert that the alleged false statements were made with a retaliatory motive. This falls far short of the requirement that "plaintiff's pleading be factual and not conclusory. Mere allegations of constitutional retaliation will not suffice; plaintiffs must rather allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." Frazier v. DuBois, 922 F.2d at 562 n.1.

The court recommends that all claims against Ms. Rodgers be dismissed with prejudice.

### *Lieutenant Justin Rodgers*

Ruppert states in his Amended Complaint that, on June 17, 2009, he was awakened after midnight by Lieutenant Justin Rodgers ("Lt. Rodgers") for an interview with respect to an informal complaint which Ruppert filed against the GCCF librarian. He says that the interview was not completed until 1 a.m.

Ruppert alleges that Lt. Rodgers had no legitimate reason to conduct the interview in the middle of the night and that Lt. Rodgers did so in order to retaliate against him for exercising his First Amendment rights in filing a grievance against the prison librarian who, Ruppert says, refused

to permit him to make photocopies. Lt. Rodgers signed off on the informal complaint, noting it was "resolved," with the explanation that Ruppert "Attempted to make copies on off hours." [Doc. 35, Ex. BB5]. Ruppert further alleges that on January 12, 2009, Lt. Rodgers prevented him from speaking with the mailroom supervisor about legal mail issues and that on February 17, 2009, Lt. Rodgers stopped him in the hallway and took some unlined paper away from him, paper which Ruppert planned to use for submissions to the court.

The Court finds that Ruppert's allegations against Lt. Rodgers constitute "insufficient circumstantial evidence of a retaliatory motive" against Ruppert for exercise of his right to file grievances. Brown v. Sales, No. 96-6068, 1997 WL 375347, at *1 (10th Cir. Jul. 8, 1997).

The Court recommends that all claims against Lt. Rodgers be dismissed with prejudice.

*Roberta Ariaz*

In the Amended Complaint, Ruppert alleges that Roberta Ariaz ("Ariaz"), the correctional facility librarian, wrote two misconduct reports against Ruppert in retaliation for his exercising his First Amendment rights.

In the first misconduct report, Ariaz writes that on January 14, 2009, Ruppert asked her to make free photocopies for him and that he refused to fill out a form so that he could be charged for the copies, as was required of all inmates. In the second misconduct report, Ariaz states that on June 9, 2009, Ruppert told her he needed to make 15 photocopies and filled out a Copy Request Form for 15 copies, but that he actually had 23 pages to be copied. She wrote further that this was not the first incident of Ruppert lying to her. [Doc. 35, Ex. BB6].

There is nothing in these allegations that would provide a plausible basis for concluding that Ariaz filed the misconduct reports in order to retaliate against Ruppert for exercise of his constitutional rights. Mere allegations of retaliation do not suffice to state a claim. In addition, in a grievance Ruppert filed on June 9, 2009, asserting that Ariaz failed to allow him to make photocopies of legal materials, he does not claim that she was retaliating against him for exercise of his rights. [Doc. 35, Ex. BB5].

The Court recommends that all claims against Defendant Ariaz be dismissed with prejudice.

### *Tim LeMaster*

Ruppert alleges that Tim LeMaster ("LeMaster"), Deputy Secretary of Operations for the New Mexico Corrections Department, stated in written opinions denying two of Ruppert's grievance appeals that Ruppert would subject to disciplinary action if he continued to exercise his rights of free speech and continued to participate in a protected activity. [Doc. 34, at 7].

Ruppert included with his Amended Complaint copies of the two grievance appeals which, he alleges, contain these threatening statements. [Doc. 35, Exs. BB8, BB9]. In both documents, each dated May 29, 2009, LeMaster concludes that Ruppert failed to provide any evidence to support the claims made in his grievances. Both documents include the following identical statements:

> You continue to submit false allegations and utilize the grievance procedure against staff in retaliation because of your allegation of discrimination by the New Mexico Corrections Department staff. You continue to submit false allegations against staff for following policy and when you do not get your way with staff. CD-150500, states that inmates are prohibited from the misuse/abuse of the grievance system. Inmates are not to use this procedure as a form of harassment against staff. Inmates using the grievance procedure to perpetrate the commission of a purposeful serious misconduct will be subject to disciplinary action consistent with current disciplinary policy provisions. You are retaliating against staff and the Department and this is prohibited.

These statements were made in a formal, written opinion intended to be made part of the record in a prison grievance appeal. In them, LeMaster advises Ruppert that Corrections Department written policy prohibits inmates from misuse or abuse of the grievance system and warns him that he will be subject to disciplinary action "consistent with current disciplinary policy provisions," if he uses the grievance procedure to perpetrate serious misconduct. Such a statement might have a chilling effect on an inmate who seeks to use the grievance process to harass or retaliate against prison staff, but there is nothing unconstitutional in that.

Actions by prison officials that have a chilling effect on an inmate's pursuit of *legitimate* grievances are proper subjects of a § 1983 complaint; however, a statement by a senior Corrections Department official which characterizes an inmate's use of the grievance procedure as abusive, and

which warns the inmate that continuation of such abuse will subject him to discipline in accord with Department policy, does not constitute a violation of the inmate's constitutional rights.

*Cf.* Pittman v. Tucker, 213 Fed. Appx. 867 (11th Cir. 2007), in which the court reversed summary judgment on an inmate's claim that a prison officials threatened that "something drastic" would happen if the inmate continued to file grievances and that he should "Learn to play the game or have a boot put in your ass," but affirmed summary judgment on the claim that verbal threats of future disciplinary action were made, as the prison had in place a formal, multi-step disciplinary procedure with adequate due process safeguards.

The Court recommends that all claims against Tim LeMaster be dismissed with prejudice.

### *Ms. Torello and Lieutenant Torello*

Ruppert claims that Ms. Torello, Job Coordinator at GCCF, conspired with her husband, Lt. Torello of the GCCF, "to try and find a way to issue a misconduct report" against Ruppert, in order to justify her refusal to let him have a job in the commissary. He alleges further that, in furtherance of this scheme, on January 28, 2009, Lt. Torello ordered Sergeant R. Blea to write a misconduct report accusing Ruppert of being in the library without permission, even though Sgt. Blea had in fact given Ruppert permission to go to the library. This was done by Lt. Torello and Ms. Torello, Ruppert alleges, in retaliation for exercise of his First Amendment rights. [Doc. 34, at 8-9].

Ruppert further alleges that Ms. Torello "tried to assign plaintiff to corridor job." He claims this was done as a "setup for misconduct reports," in that inmates on corridor jobs are often sent back to their cells by corridor officers and this prompts the housing unit officers to write misconduct reports charging that the inmate was not at his proper job assignment. He also claims that Ms. Torello, apparently on another occasion, tried to give him a job in the kitchen, "but this is another set up knowing plaintiff worked in the kitchen in the past always ended up some form of altercation with staff." In addition, he says his other job requests were denied. He claims all of this was done in retaliation for his filing grievances. [Doc. 34, at 10].

There is nothing in these allegations that would provide a plausible basis for concluding that

the actions taken by either Ms. Torello or Lt. Torello were done in retaliation against Ruppert for exercise of his constitutional rights. Mere allegations of retaliation do not suffice to state a claim. The Court recommends that all claims against Ms. Torello and Lt. Torello be dismissed with prejudice.

### *Ms. Jaramillo*

Ruppert alleges in his Amended Complaint that "Ms. Jaramillo," Education Director at GCCF, is the staff member designated to provide legal assistance to prisoners. He states that Ms. Jaramillo is not trained in the law and is not qualified to provide such assistance. He further alleges that GCCF has no law library and that he does not have access to legal texts, to pen and paper, or to notary service. He argues that "prison authorities are thus required to assist inmates (plaintiff) in the preparation and filing of meaningful legal papers by providing inmates (plaintiff) with adequate law libraries or adequate assistance from persons trained in the law." [Doc. 34, at 12-13].

This is a restatement of the claims that were dismissed, with prejudice, in the June 8 Order. In that Order, the Court noted that Ruppert failed to allege relevant actual injury, that he has no abstract, free-standing right to legal assistance, and that he cannot make out a § 1983 claim by alleging that his prison's legal assistance program is sub-par in some theoretical sense. Ruppert has not been denied the opportunity to prepare and file his complaint. Indeed, he has been a prolific filer in this lawsuit.

Ruppert attempts to revive his claim that GCCF's law library and legal assistance facilities are inadequate by casting the claim as retaliation by Ms. Jaramillo. He claims that she "knew that plaintiff was seeking legal claims against her (Ms. Jaramillo) fellow co-workers so retaliated by not correcting [sic] helping plaintiff." [Doc. 34, at 11]. This bare allegation does not meet the plausibility standard of Bell Atlantic, nor does it meet the requirement of Frazier v. DuBois that a retaliation claim be "factual and not conclusory." Id., at 562 n.1.

The Court recommends that all claims against Ms. Jaramillo be dismissed with prejudice.

9

### *Ms. Chavez*

Ruppert claims that Ms. Chavez, the supervisor for New Mexico Corrections Industries printshop suspended him for three days, then terminated him for "two printing mistakes." [Doc. 34, at 13-14]. He says he then filed two informal complaints against Ms. Chavez for improper job termination, and Captain Garcia scheduled a meeting on April 16, 2008 to discuss issues involved in the termination. Ruppert states further that at the meeting, the parties came to an agreement to let him come back to work in 90 days; however, this never happened due to an "extremely bad work recommendation" filed by Ms. Chavez. [Id., at 15]. He alleges that Ms. Chavez's actions were done in retaliation against Ruppert for exercise of his constitutional rights.

As noted in the June 8 Order dismissing Ruppert's claims for wrongful termination, he has no liberty interest in his prison job. However, "although plaintiff has no right to a job or to any particular assignment, prison officials cannot punish plaintiff for exercising his first amendment rights by denying him certain job assignments or transferring him from one job to another." Williams v. Meese, 926 F.2d 994, 998 (10th Cir. 1991).

Ruppert alleges that Ms. Chavez had a retaliatory motive in terminating him from his printshop job and in giving him a negative work recommendation. However, there is no factual support in the Amended Complaint or in Ruppert's attachments thereto to support this bare assertion and "nudg[e] [his] . . . claims across the line from conceivable to plausible." Bell Atlantic v. Twombly, at 570.

The Court recommends that the claims against Ms. Chavez be dismissed with prejudice.

### **Recommended Disposition**

1. That Ruppert's allegation against Defendant Phil Aragon – *i.e.*, that Aragon retaliated against him for exercise of his First Amendment rights by threatening to transfer or lock him up if he filed a lawsuit – be allowed to proceed, and that the Clerk be directed to issue notice and waiver of service forms for Defendant Phil Aragon; and

2 That all of Plaintiff's remaining claims be dismissed with prejudice, and that Defendants

Bravo, Ms. Rodgers, Lt. Justin Rodgers, Roberta Ariaz, Tim LeMaster, Ms. Torello, Lt. Torello, Ms. Jaramillo and Ms. Chavez be dismissed as parties to this action.

> Lorenzo F. Garcia
> Chief United States Magistrate Judge