IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JAMES KEVIN RUPPERT,

        Plaintiff,

vs.                                                                                      No. CIV 09-138 MV/LFG

PHIL ARAGON,

        Defendant.

## MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION[1]

THIS MATTER is before the Court on the Motion for Summary Judgment included in Defendant Phil Aragon ("Aragon")'s Martinez Report [Doc. 83], and the Motion to Amend Complaint, included by Plaintiff James Kevin Ruppert ("Ruppert") in his Response to Martinez Report [Doc. 84]. For the reasons given below, the Court recommends that Ruppert's Motion to Amend the Complaint be denied and that this case be dismissed without prejudice for failure to exhaust administrative remedies.

### Procedural Background

Ruppert filed his Complaint [Doc. 1] in this case on February 11, 2009. He asserted a number of claims against various defendants arising from allegations of constitutional violations occurring during his incarceration at Guadalupe County Correctional Facility ("GCCF") in Santa Rosa, New Mexico.

On June 8, 2009, Chief United States District Judge Martha Vázquez entered a Memorandum Opinion and Order [Doc. 22] following a *sua sponte* review under 28 U.S.C. § 1915. In this Order,

---

[1] **Within fourteen (14) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the 14-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.**

Judge Vázquez dismissed with prejudice Ruppert's claims against the named defendants and directed him to file an amended complaint, if he so chose, asserting a claim that he was threatened with retaliation for exercising his First Amendment rights and naming the appropriate defendant in connection with that claim.

Ruppert filed his Amended Complaint [Doc. 34] on July 10, 2009, arguing that each of the defendants originally named was guilty of retaliating against him for exercise of his constitutional rights to file grievances and lawsuits. On July 20, 2009, the undersigned Magistrate Judge entered a Report and Recommendation [Doc. 37], examining Ruppert's claims against each of eleven defendants and recommending that Ruppert be allowed to proceed against only one of these defendants, Phil Aragon.

On September 22, 2009, Judge Vázquez adopted the Report and Recommendation, dismissing with prejudice all claims in Ruppert's Amended Complaint except his claim that defendant Aragon threatened to transfer Ruppert or lock him up if continued to exercise his First Amendment rights to file grievances and lawsuits. [Doc. 46]. Aragon was served with process and filed his Answer [Doc. 57] on February 17, 2010.

On February 19, 2010, Aragon was ordered to submit a Martinez Report, pursuant to Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1978). The Order [Doc. 58] directed Aragon to provide responses to specific questions, in order to develop the factual and legal basis for determining whether Ruppert had a meritorious claim. The parties were notified that the Martinez report, and any response thereto filed by Ruppert, could be used to decide whether summary judgment is appropriate in this case. [Id., at 2, 4-5].

Aragon filed his Martinez Report [Doc. 83] on May 18, 2010. Ruppert filed a Response to the Martinez Report on June 16, 2010 [Doc. 84], and Aragon filed a Reply [Doc. 85] on June 28, 2010. As noted above, Aragon's Martinez Report included a request that the Court enter summary judgment in his favor.

The Court finds that, with the filing of Ruppert's Response to the Martinez Report and

Aragon's Reply thereto, the motion for summary judgment is now fully briefed. The documents and arguments submitted by the parties to this action compel the conclusion that Defendant is entitled to summary judgment in his favor and Plaintiff's Complaint should be dismissed without prejudice; and further that Plaintiff's request to amend his Complaint should be denied.

## Discussion

The remaining claim in this lawsuit is based on Ruppert's allegations of retaliation for exercise of his First Amendment right to bring lawsuits against corrections officials. In his Amended Complaint, Ruppert alleges that Defendant Aragon twice made threats to discourage or prevent him from filing this lawsuit. On the first occasion, Ruppert says, Aragon threatened to have him transferred; on the second occasion, Ruppert alleges, Aragon threatened to have him locked up in administrative segregation.

### Exhaustion of Prison Remedies

In his Martinez Report, Aragon argues that Ruppert's complaint must be dismissed because he failed to exhaust his prison grievance remedies before filing suit.

The Prison Litigation Reform Act ("PLRA") provides that "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "[A] prisoner must exhaust the administrative remedies available. Moreover, the PLRA's exhaustion requirement applies to all inmate suits about prison life. Exhaustion is mandatory, and proper exhaustion is required." Stephens v. Guilfoyle, 225 Fed. Appx. 732, 736 (10th Cir. 2007) (internal punctuation and citations omitted).

1. *Exhaustion of Claim Re: Alleged Threat of December 9, 2008*

Ruppert asserts that on December 9, 2008, during an interview regarding one of the complaints Ruppert lodged against a GCCF official, Aragon threatened to transfer Ruppert (presumably to another correctional facility) if he filed a lawsuit against the official. [Doc. 34, at 2].

Ruppert states that the reason for his meeting with Aragon was to discuss a formal complaint he filed against Grievance Officer Lt. Jessica Rodgers (now Lt. Jessica Vigil, hereinafter referred to as "Vigil"). [Doc. 84, at 10; Doc. 1, Ex. I]. Ruppert's formal complaint alleged that Vigil refused to consider a grievance Ruppert filed against his former supervisor at the prison printshop. Ruppert claimed that Vigil "simply doesn't want to deal with the subject matter of my complaint," that she is biased and unable to be objective, and that she is denying him a fair and impartial settlement of his grievance against the printshop supervisor. [Doc. 1, Ex. I].

Aragon states in his Affidavit that he does not specifically recall having a meeting with Ruppert on December 9, 2008, although he does recall speaking informally with Ruppert in January 2009 "to discuss that it might be in his best interest to be transferred to a different facility or to be placed in administrative segregation." [Doc. 83, Ex. 7, at 3].

Aragon states further that he was concerned about Ruppert's "increasing paranoia and angry demeanor" and says he made the statements about transfer or administrative segregation "in an attempt to make him aware that his actions in filing further grievances or initiating a lawsuit regarding the print shop job issue could result in further conduct [by prison officials] which Ruppert would, based on his prior behavior, perceive to be retaliatory." Aragon says he specifically informed Ruppert that his safety and well-being were the highest priority in the situation. [Id.]. Aragon says further that it was never his intention to dissuade Ruppert from filing a lawsuit or initiating grievances, and he believed he was "acting in Ruppert's best interests by encouraging him to move on." [Id., at 4].

Ruppert's informal complaint against Vigil, which Ruppert says was the reason for the December 9, 2008 meeting, was reviewed by Aragon on December 8, 2009. Aragon wrote on the document that the informal complaint was resolved, in that Ruppert had already filed a formal grievance against Vigil which was still pending. The statement that the matter was resolved was signed by both Aragon and Ruppert on December 9, 2008. [Doc. 1, Ex. I].

The fact that Aragon and Ruppert both signed the document on that date tends to show that

4

the two may have met on that date, although it certainly isn't definitive evidence of a December 9, 2009 meeting. Aragon, as noted above, does not remember a meeting with Ruppert on that particular date. This apparent conflict in the evidence doesn't preclude summary judgment. Aragon acknowledges that, at some point (and he recalls it happened in approximately January 2009), he did meet with Ruppert and discussed both transfer to a different facility, and placement in administrative segregation.

What isn't in dispute is that Ruppert failed to exhaust his administrative remedies with respect his allegation that in December 2008 Aragon threatened him with transfer if he filed a lawsuit against Vigil. Ruppert never filed an informal complaint or a formal grievance against Aragon based on this alleged incident [*see*, Doc. 83, Ex. 3, at 1], and the claim that he was threatened by Aragon in December 2008 is therefore unexhausted.

New Mexico Corrections Department Policies CD 1505000 and 150501 [Doc. 85, Exs. 11, 12] establish procedures for resolution of inmate grievances, including the following steps: (1) informal complaint and attempt at informal resolution; (2) grievance; (3) review of grievance by the facility's Grievance Officer; (4) decision by the facility's Warden; (5) appeal to the Office of the Secretary of Corrections; (6) decision of the Secretary of Corrections or designee.

In his Complaint, Ruppert alleges that he did not file a grievance against Aragon with respect to this incident "out of fear of retaliation." [Doc. 1, at 5]. The record belies Ruppert's assertion of intimidation and fear, as he continued to file multiple grievances after this alleged incident including one against other prison officials the very next day, December 10, 2010. [Doc. 84, at 16 ("Ex. J-1")]. In any event, allegations of futility or unfairness of the grievance process do not excuse a failure to exhaust. Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002); *see also*, Farrell v. Addison, 34 Fed. Appx. 650, 651-52 (10th Cir. 2002).

2. *Exhaustion of Claim Re: Alleged Threat of January 12 or 13, 2009*

Ruppert next alleges that on January 12, 2009, Aragon called him into an office to discuss an informal complaint Ruppert filed against another GCCF official. At that meeting, Ruppert

contends, Aragon "made it clear, that if I file this lawsuit that he would lock me up on involuntary administration segregation to keep his staff from retaliating against me." He says he "did experience the chill effect of first amendment violation." [Doc. 34, at 2].

As noted above, Aragon states in his Affidavit that he recalls a meeting in his office in January 2009 where he spoke informally with Ruppert, "to discuss that it might be in his best interest to be transferred to a different facility or to be placed in administrative segregation," and that he made these statements to Ruppert to make him aware that filing further grievances or lawsuits regarding the printshop issue "could result in further conduct which Ruppert would, based on his prior behavior, perceive to be retaliatory." [Doc. 83, Ex. 7, at 3].

Ruppert says that he brought the January 2009 incident to the attention of Warden Erasmo Bravo, and a Major Morris, in a meeting that took place on January 14, 2009. [Doc. 34, at 3]. He states that he prepared an affidavit regarding this meeting and refers to an "Ex. N," which appears to be a reference to an exhibit to his original complaint [Doc. 1, Ex. 1, at 44-46]. This document was handwritten by Ruppert, signed and notarized by him on January 20, 2009. In it, he states that he met on January 14, 2009 at 9:45 a.m. with Warden Bravo and Major Morris. At this meeting, Ruppert says, he brought up the issue of Aragon threatening to lock him up if he filed a lawsuit, and both Bravo and Morris told him that they would not lock him up for that. [Id.].

Aragon states in his Affidavit that he learned that Ruppert complained about him to Warden Bravo and Major Morris, and that Ruppert later filed an informal complaint and then a formal grievance. [Doc. 83, Ex. 7, at 4]. Warden Bravo states in his Affidavit that he has no recollection of a meeting with Ruppert in January 2009 to discuss an alleged threat by Aragon to transfer Ruppert, and GCCF is not in possession of any documents substantiating such a meeting. [Doc. 83, Ex. 6, at 1].

Ruppert did, in fact, file an informal complaint against Aragon based on the January 2009 meeting. In this complaint, submitted January 14, 2009, Ruppert alleges that during a meeting to discuss an informal complaint he had filed against Vigil, Aragon "told me that if I file this law suit

6

that he would lock me up on involuntary administration segregation, to keep his staff from retaliating against me." [Doc. 83, Ex. 2, at 1].

Not being satisfied with the resolution of the informal complaint, Ruppert then filed a formal grievance on January 21, 2009. In the grievance, Ruppert alleges that "Capt. Aragon told me that if I file this lawsuit that he would lock me up on involuntary administration segregation to keep his staff from retaliating against me. Almost sounds like he don't have control over his own staff. I have a federal constitutional right to redress my grievances to the court and exercise my constitutional rights under due process." [Doc. 83, Ex. 2, at 2]. Under the "Relief Requested" section of the grievance, Ruppert wrote: "Some sort of disciplinary action should be taken, maybe a suspension would be appropriate. Main relief is just basically to have incident on record, or documented." [Id.].

In the "Staff Member Statement" which Aragon wrote in response to Ruppert's grievance, Aragon stated:

> I specifically went above & beyond in order to explain to I/M Ruppert that because he had filed a lawsuit & named most of the staff members @ GCCF as plaintiffs that it may be in his best interest to transfer to another facility. I also advised him that would not want anyone, to include inmates, to retaliate against him & that his safety & well being was first & foremost.

[Id., at 4].

The grievance was investigated and the Grievance Officer concluded in a report dated February 19, 2009 that "Captain Aragon at no time was making any threats or obstructing inmate Ruppert from his constitutional rights," and that Ruppert "failed to substantiate any negligence or inappropriate behavior on behalf of Captain Aragon." [Id., at 5]. Ruppert filed an appeal of the grievance on February 27, 2009. [Id., at 7].

On May 29, 2009, Deputy Secretary Tim LeMaster of the New Mexico Corrections Department issued a decision denying the appeal. [Id., at 8].

Ruppert took all steps required by Corrections Department policy in effect at the applicable time, to complete his grievance. However, he did not fully exhaust his prison remedies because he

filed this lawsuit before giving the grievance system a chance to complete, or really even begin, its work.

Ruppert filed suit on February 11, 2009. [Doc. 1]. At the time he filed suit, his grievance against Aragon and was still being investigated by prison officials; the first official response to the grievance was not issued until February 19, 2009. Initiating, but failing to complete, the grievance process prior to filing suit constitutes a failure to exhaust prison remedies. Jernigan v. Stuchell, *supra*, at 1032.

Ruppert did not name Aragon as a Defendant in his initial Complaint. However, in the body of his Complaint he alleged that "on Dec. 9 08 approx 10:45 AM Captain Aragon first threatened me with transfer if I filed suit"; that a grievance he filed against another prison official "came back with misleading answer from Captain Aragon"; that on January 13, 2009, he "Received threat from Capt. Aragon gave me the 'chill effect'"; that on January 14 he "told the warden about the threat from Captain Aragon"; and that he "filed on Captain Aragon for making threat." [Id., at 5, 6].

Similar allegations against Aragon were included in a portion of the Complaint labeled "Cause of Action - Supporting Facts": "On Jan. 13th 08 Captain Aragon threatened to lock me up if I filed this lawsuit to keep his staff from retaliating against me, this had the 'chill effect' for a couple of days, But did not stop me." [Id., at 3A-3B].

As noted above, on June 8, 2009, Judge Vázquez entered a Memorandum Opinion and Order in which she dismissed Ruppert's First Amendment, due process, and equal protection claims based on various alleged instances involving his prison employment and grievances resulting therefrom. The Court further noted, however:

> In the text of the complaint, Plaintiff alleges that he was twice threatened with being transferred or locked up if he initiated litigation. These allegations may state a claim for retaliation in violation of the First Amendment. *See Mackey v. Lyons*, 52 F. App'x 468, 472 (10th Cir. 2002)("retaliation claims are cognizable even where the alleged retaliatory action would be otherwise permissible."); *Cowles-Sims v. Fields*, 72 F. App'x 827, 830 (10th Cir. 2003) (same). Plaintiff will be allowed to file an amended complaint asserting a retaliation claim against a particular party. Failure to comply with this Order may result in dismissal of this

      action without further notice.

[Doc. 22, at 3]. Ruppert was given 15 days to file an Amended Complaint asserting the First Amendment retaliation claim and naming the specific person responsible for the alleged retaliation or threats thereof. [Id., at 4].

      After receiving an extension of time, Ruppert filed his Amended Complaint [Doc. 34] on July 10, 2009. In the Amended Complaint, Ruppert again failed to name Aragon in the caption and did not refer to Aragon as a Defendant. However, Ruppert made allegations in the body of the Amended Complaint specifically stating that Aragon made threats to transfer Ruppert, or to lock him up in administrative segregation, if he filed a lawsuit against GCCF officials. [Id, at 2-3].

      Ruppert now contends that he completed exhaustion of his claims against Aragon, because the final decision on his grievance appeal against Aragon was rendered May 29, 2009, prior to the date of Judge Vázquez's June 8 Order, and prior to the filing of the Amended Complaint. He contends that the fact that Aragon was not specifically named as a Defendant in the original Complaint means that he was "not a party" when the lawsuit was first filed on February 11, 2009 and "did not become a Judicial issue in the legal sense until" the Amended Complaint was filed and Aragon was served with process. [Doc. 84, at 5, 6].

      Ruppert argues further that the "first attempt to notify defendant [Aragon] of the pending lawsuit" came on September 22, 2009 when the Court ordered service of process, by which time the grievance procedure had run its course. Thus, he contends, exhaustion was complete before suit was brought against Aragon. The Court rejects these contentions.

      As noted above, the PLRA provides that "no action shall be brought" with respect to prison conditions until after all administrative remedies are exhausted. 42 U.S.C. § 1997e(a). The statute refers to an action being "brought," *i.e.*, filed, not to its being "served." Thus, the Court rejects Ruppert's argument that the time of service is the crucial date.

      In addition, Ruppert's argument that the lawsuit against Aragon did not commence until the time of the Amended Complaint is likewise unavailing. The purpose of the exhaustion requirement

is not to throw roadblocks in the way of plaintiffs with legitimate complaints, nor to thwart their ability to access the courts. Rather, as the Supreme Court points out:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might "filter out some frivolous claims." And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

Porter v. Nussle, 534 U.S. 516, 524-25 (2002) (internal citations omitted).

Whether Aragon was aware of the lawsuit prior to the time he was served is irrelevant to the question of exhaustion. The point is to allow prison authorities a chance to investigate and, if appropriate, to correct the problem that gave rise to the grievance, before the federal courts are asked to intervene. Ruppert failed to do that in this case. He filed a grievance against Aragon on January 21, 2009, and before any action was taken on that grievance he filed a Complaint in federal court in which he made specific allegations against Aragon.

The fact that the Court allowed Ruppert an opportunity to amend his Complaint under the admonition of Haines v. Kerner, 404 U.S. 519, 520 (1972) (that *pro se* litigants are held "to less stringent standards than formal pleadings drafted by lawyers"), does not mean that the original Complaint was never filed or is somehow a nullity. Gilles v. United States, 906 F.2d 1386, 1389 (10th Cir. 1990) ("the commencement of suit effected by the filing of the original complaint was not destroyed by filing of the amended complaint").

Aragon was an integral part of the lawsuit from the beginning, and at the time Ruppert filed his original Complaint, the allegations against Aragon as set forth in that Complaint had just begun their process through the prison grievance system. As the Supreme Court pointed out in Porter, this is precisely the situation Congress intended to avoid in enacting the mandatory exhaustion requirement.

*See also*, Stevens v. United States, No. 02-3181, 2003 WL 1712123, at *1 (10th Cir. Apr. 1,

2003), a case involving exhaustion of administrative remedies in the context of a Federal Tort Claims Act case:

> Mr. Stevens filed this action in district court prior to exhausting his administrative remedies. His administrative claim was denied before the district court dismissed this action. However, the court concluded that the fact that he ultimately exhausted those remedies did not ripen his current action. We agree. We have held that even the filing of an amended complaint, an action Mr. Stevens did not take, does not serve to cure a prematurely filed original complaint. See Duplan v. Harper, 188 F.3d 1195, 1199 (10th Cir. 1999) (as general rule, premature complaint cannot be cured through amendment, instead, plaintiff must file new suit).

Thus, the Court finds that Ruppert's action in filing a lawsuit in February 2009 which included claims that he was threatened by Aragon, at a time when his grievance against Aragon was still being investigated by prison officials, constitutes a failure to exhaust remedies with respect to Aragon.

Because Ruppert failed to exhaust his remedies with respect to the only claim left in this case, the Complaint and the action must be dismissed, without prejudice. While it might promote judicial efficiency to consider the claim on its merits, given that the prison grievance procedure ran its course not long after Ruppert filed suit, that option is not open to this Court.

> 42 U.S.C. § 1997e(a) requires exhaustion of administrative remedies as a precondition to bringing litigation, and requires dismissal where a litigant has failed to complete such exhaustion. Except in limited circumstances, the plain language of the statutory text does not allow the court to skip ahead to the merits of the suit . . . . [S]uch a rule should apply even where it might otherwise serve the interest of judicial economy to resolve the merits of a case while it is currently before the court . . . . [S]tatutes forbidding the commencement of a suit are too clear to tolerate revisionism in the name of efficient litigation management.

Fitzgerald v. Corr. Corp. of Am., 403 F.3d 1134, 1140-41 & n.2 (10th Cir. 2005) (internal punctuation and citations omitted). The "limited circumstances" noted in Fitzgerald are not applicable in this case.

### Plaintiff's Request to Amend Complaint

Attached to the end of his Response to the Martinez Report, Ruppert included a document

11

labeled, "Motion - Plaintiff request written permission to file and Eighth Amendment claim, with motion for production of documents." Ruppert's allegation is difficult to follow, but he appears to claim that certain unnamed corrections officers conspired to move him from his current cell assignment and "set plaintiff up for vicious attack." [Doc. 84-3, at 25]. He alleges this incident occurred on April 19, 2010, at 4 a.m. while he was sleeping. This document was not properly submitted nor docketed as a formal motion; nevertheless, the Court will consider it as a motion to amend.

FED. R. CIV. P. 15(a) provides that a complaint may be amended once as a matter of course at any time before a responsive pleading is served, and that any later pleadings may be filed only with leave of court or by written consent of the adverse party. The rule goes on to state that "leave shall be freely given when justice so requires." In this case, a responsive pleading has already been filed, so leave of court is required.

The Tenth Circuit notes that, while the "liberal granting of motions for leave to amend reflects the basic policy that pleadings should enable a claim to be heard on its merits," nevertheless, "[t]his policy is not limitless." Calderon v. Kan. Dep't of Soc. and Rehab. Servs., 181 F.3d 1180, 1186 (10th Cir. 1999).

> While leave to amend "shall be freely given when justice so requires, FED. R. CIV. P. 15(a), parties seeking the benefit of the rule's liberality have an obligation to exercise due diligence; unseemly delay, in combination with other factors, may warrant denial of a suggested amendment . . . . A party's belated attempt to revise its pleadings requires that a court examine the totality of the circumstances and exercise sound discretion in light of the pertinent balance of equitable considerations.

Quaker State Oil Refining Corp. v. Garrity Oil Co., 884 F.2d 1510, 1517 (1st Cir. 1989).

In this case, Ruppert asks the Court to allow him to add new claims arising well over a year after he filed this lawsuit. Ruppert cannot simply add new claims to a longstanding lawsuit as they occur to him. The new allegations do not arise out of the events set forth in Ruppert's original or amended Complaints but rather constitute entirely separate claims.

In addition, the new claims are only vaguely described, and they contain no reference to any

particular person or persons whom he alleges conspired against him, set him up, and/or attacked him. Under the "totality of the circumstances in light of the pertinent balance of equitable considerations," the Court declines Ruppert's request that these claims be added to this suit.

### Recommended Disposition

That Plaintiff's request to amend his complaint be denied, that the complaint be dismissed and this action be dismissed without prejudice for failure to exhaust administrative remedies, and that Defendant's Motion to Restrict Plaintiff's Communication with Defense Counsel [Doc. 81] be found moot.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge